FILED

2003 OCT 21  P 12: 02

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH GIBSON, III | : |
| VS. | : NO. 3:02CV1592(JCH) |
| WARDEN BROOKS,<br>LIEUTENANT KING and<br>C.T.O. DIEFENDERFOR | :<br>:<br>: OCTOBER 19, 2003 |

## BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

The plaintiff is a prisoner. During a previous incarceration, on charges unrelated to those which currently imprison him, he was an informer for the Department of Correction, giving particular attention to furnishing information about weapons and gang activities in the prison.

In early September of 1999, the plaintiff learned that his identity as a "snitch" had become suspected. For that reason, and because a friend of his owed money to the Latin Kings but was in a protected environment where they could not get at him, the plaintiff was targeted for a "hit" by the gang. He promptly informed the defendants, naming the four gang members assigned to kill him. The plaintiff was assured that he would be protected and, indeed, three of the four prospective killers were transferred out of the prison before they could get to the plaintiff. The fourth was not and as the plaintiff was in the process of telephoning one of the defendants

to provide him with more information, slit the plaintiff's throat with a razor. The plaintiff survived but suffers from the injury, both physically and psychologically, to this day.

The seriousness of the plaintiff's injuries got him immediate attention and, after initial treatment, the plaintiff complained to one of the defendants about the failure to protect him. The defendant acknowledged that he had failed to provide protection and apologized to the plaintiff.

The plaintiff thereafter was released on parole and discharged. Before he could file this suit, he was arrested on new and unrelated charges and re-imprisoned. He was a prisoner when he filed this suit.

The defendants have moved for summary judgment. They assert: (1) that the plaintiff was required by the Prison Litigation Reform Act to exhaust administrative remedies before filing suit; (2) that the plaintiff failed to exhaust those administrative remedies; (3) that two of the three defendants had no involvement in the plaintiff's injury; and (4) that the one remaining defendant is entitled to qualified immunity for reasons which are not clearly articulated.

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); see also Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn.

205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

**A.    *The plaintiff did exhaust his administrative remedies.***

The Second Circuit permits the administrative exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), Porter v. Nussle, 534 U.S. 516 (2002), to be met by using informal channels rather than formal or official grievance procedures. *E.g.*, Marvin v. Goord, 255 F.3d 40, 43 (2nd Cir. 2001). *See* Ortiz v.

McBride, 323 F.3d 191 (2nd Cir. 2003). Here, the plaintiff has testified that he did, indeed, complain to a DOC official, one of the defendants, about the failure to protect and got an acknowledgment of wrongdoing and an apology.

**B.     *The plaintiff was not required to exhaust administrative remedies.***

The Second Circuit has not yet ruled on the question whether the PLRA's administrative exhaustion requirement applies to prisoners who were discharged from custody after the incident subject to suit, but were thereafter reimprisoned on unrelated charges prior to suing. Judge Dorsey ruled in an unreported case, Foss v. Booker, No. 3:02CV1650(PCD), that the requirement did apply under those circumstances. The inmate's appeal was withdrawn after he was killed recently. Meanwhile, however, he had been discharged from custody again and refiled his suit. Foss v. Booker, No. 3:03CV1325 (JBA).

There is no question that an event of the kind alleged in the present suit constitutes a "prison condition" subject to the exhaustion of administrative remedies requirement of the Prison Litigation Reform Act. Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 532 U.S. 731 (2001).

The Second Circuit has held, as have several others, that the Act's exhaustion requirement – like the other requirements of the PLRA – applies only to suits brought by prisoners. Thus, a prisoner serving a relatively short sentence can wait until his discharge before filing suit and thereby avoid those requirements. Greig v. Goord, 169 F.3d 165 (2d Cir. 1999); Janes v. Hernandez, 215 F.3d 541,

543 (5th Cir. 2000); Kerr v. Puckett, 138 F.3d 321, 322-23 (7th Cir. 1998); Doe v. Washington County, 150 F.3d 920, 924 (8th Cir. 1998).

The applicable portion of the statute in question states: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As the cases cited above have held, this provision applies to suits "by a prisoner" and not "by a former prisoner". The statutory reference to "such administrative remedies as are available" seems to contemplate that the remedies are available to the prisoner *in his current confinement*, and thus, for example, not to apply to a prisoner in State A bringing suit regarding conditions in State B, where he was confined previously.

The legislative history of the PLRA is less helpful than might be hoped, because the law was added on as an amendment to an appropriations bill and had less than the usual full debate either in committee or on the floor. Such debate as there was, however, appeared to concentrate on the belief of legislators that an administrative exhaustion requirement would enable prison ombudsmen or the like to resolve many disputes and screen out other claims not worthy of judicial attention. See, *e.g.*, 141 Cong. Rec. H14078-02 (December 6, 1995). Expanding the exhaustion requirement to prisoners litigating over pre-confinement prison

conditions would not serve this goal and thus it is unlikely that Congress intended such an application.

The Prison Litigation Reform Act was written against the background of a firmly established rule that there is to be no exhaustion of administrative remedies requirement in Section 1983 litigation unless it has been specifically mandated or clearly required by Congress. Booth v. Churner, 532 U.S. 731 (2001); McCarthy v. Madigan, 503 U.S. 140 (1992). Thus, there exists a presumption against an administrative exhaustion requirement and doubts about the intent of Congress should be resolved in favor of not imposing any such requirement upon litigants.

Unless and until Congress or the Supreme Court specifically instructs otherwise, no administrative exhaustion requirement should be inferred from the PLRA in the case of a prisoner like the appellant who served his sentence and was released into the community after the injury was inflicted but before he filed his suit.

**C.    *There is sufficient evidence of personal involvement by all defendants.***

Defendants Brooks and King claim they had no personal involvement in the failure to protect the plaintiff. The plaintiff has testified that they did. While, admittedly, his testimony is based upon reasonable inferences from the facts which he knew, it provides a sufficient basis for a jury so to find. His statements to defendant Diefenderfor were made in the presence of defendant King and concerned a matter about which defendant King was obliged to report to defendant Brooks. This is admissible evidence under F. R. Ev. 401, and it is sufficient

evidence to establish liability of these defendants. "We have often acknowledged the utility of circumstantial evidence in discrimination cases....The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted. 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.' Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508 n. 17 , 77 S. Ct. 443, 1 L.Ed.2 493 (1957)." Desert Palace, Inc. v. Costa, 123 S. Ct. 2148, 2154 (2003).

### D.     *There is no basis for a finding of qualified immunity in this case*

Although the magic (because they permit interlocutory, time-consuming appeals) words "qualified immunity" appear in the defendants' brief, there is no explanation of a factual basis for using them, much less for granting summary judgment on that basis.

"A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him is not prohibited by federal law...; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct...; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2nd Cir. 2003) (citations, quotation marks and ellipses omitted). The subjective good faith of the police officer is irrelevant to the analysis and should not be considered. Koch v. Rugg, 221 F.3d 1283, 1295 (11th

Cir. 2000); Taft v. Vines, 70 F.3d 304 (4th Cir. 1995). "Because the focus of the qualified immunity inquiry is on the objective reasonableness of the defendant's actions, motivation does not come into play.'" Sound Aircraft Services v. Town of East Hampton, 192 F.3d 329, 334 (2d Cir. 1999), quoting Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1593 (1998).

The burden of pleading and proving a qualified immunity defense rests squarely and exclusively upon the defendant. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Harlow v. Fitzgerald, 457 U.S. 800 at 815 (1982); Schechter v. Comptroller of the City of New York, 79 F.3d 265, 270 (2d Cir. 1996); Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996); Castro v. United States, 34 F.3d 106, 111 (2d Cir. 1994); DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001); Buenrostro v. Collazo, 973 F.2d 39, 44 (1st Cir. 1992); Tatro v. Kervin, 41 F.3d 9 (1st Cir. 1994); Maul v. Constan, 928 F.2d 784 (7th Cir. 1991); Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 868 F.2d 307, 313 (9th Cir. 1988). The defendants have offered no evidence, and no argument, to support their claim in this case.

## CONCLUSION

The motion for summary judgment must be denied.

Respectfully submitted:

JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Robert F. Vacchelli, Esq., Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105.

JOHN R. WILLIAMS