UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

JOSEPH GIBSON, III : CIVIL NO. 3:02CV1592 (JCH)

v. :

WARDEN BROOKS, ET AL. : NOVEMBER 25, 2003

## DEFENDANTS' SUPPLEMENT TO RELY MEMORANDUM

The defendants, Warden Brooks, et al., by and through their undersigned counsel hereby supplement their Reply Memorandum filed in the above case by citing to the recent decision of Hock v. Thipedeau, No. 3:99 CV 1281 (GLG) (Memorandum of Decision, February 19, 2003) (Appeal No. 03-7527 Dismissed, 2nd Cir. June 24, 2003) (Pro Se Appeal No. 03-7568 pending), Attachment A, which holds that exhaustion of prison administrative remedies in Connecticut requires following the prescribed method set forth in DOC Directive 9.6, and that a voluntary participation in a DOC investigation or voluntarily providing information to the DOC does not suffice.

DEFENDANTS
Warden Brooks, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: /s/ Robert Vacchelli
Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct05222
E-Mail: robert.vacchelli@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 25th day of November, 2003:

John R. Williams, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

                                        Robert F. Vacchelli
                                        Assistant Attorney General

# ATTACHMENT A

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

------------------------------X

LORI HOCK,                          :

         Plaintiff,        : **MEMORANDUM DECISION**
                             3:99 CV 1281 (GLG)

  -against-                         :

PAUL THIPEDEAU,                     :

         Defendant.        :

------------------------------X

FILED

FEB 24   2 04 PM '03

U.S DISTRICT COURT
NEW HAVEN, CONN.

    The plaintiff, Lori Hock, an inmate in the custody of the State of Connecticut Department of Correction (DOC), brought this action against the defendant, Paul Thipedeau, a former DOC officer, for violating her Eighth Amendment right to be free from cruel and unusual punishment and for violating a state statute. The jury found the defendant to have violated the plaintiff's Eighth Amendment right, but that she failed to prove any compensatory damages. The jury awarded her nominal damages of one dollar and punitive damages of $30,000. The jury found further that the defendant violated the state statute, but awarded her no compensatory or punitive damages in that regard.

    At the conclusion of trial, the defendant moved orally to set aside the jury verdict as contrary to law; he filed a prior motion to dismiss the plaintiff's federal constitutional claim on October 17, 2002 [Doc. 87]. This Court denied the defendant's motions in its opinion of October 29, 2002 [Doc. 98].[1]

---

[1] The defendant contends as a ground for his motion for reconsideration that this Court decided prematurely his motions

The defendant moves now for reconsideration of that judgment [Doc. 101] and, additionally, renews his motion for judgment as a matter of law or, alternatively, for a new trial [Doc. 102]. Specifically, the defendant argues that the plaintiff failed to (1) exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a), (2) make a prior showing of physical injury pursuant to 42 U.S.C. § 1997e(e), (3) make a showing of injury sufficient to rise to the level of an Eighth Amendment violation and (4) plead expressly a violation of Connecticut General Statutes § 53a-73a.

We set forth first our standard of review for granting a motion for reconsideration. The standard is a strict one. See *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "Such a motion generally will be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. Thus, the function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or fact or to consider newly discovered evidence." *Channer v. Brooks*, No.

---

referenced in its October 29, 2002 decision. Those motions could have been decided from the bench at the time the defendant moved. The Court, however, deemed it necessary to look further into the issues as presented in those motions. Consequently, this Court ruled on them in its October 29, 2002 opinion, which in no way affected the defendant's ability to file the motions now before the Court. See Rules 50 and 59, Fed. R. Civ. P.

2

3:99CV2564, 2001 WL 1094964, *1 (D. Conn. Sept. 10, 2001) (citations omitted and internal quotation marks omitted).

The defendant argues first that the plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) (1996). The defendant has argued several times to this Court that *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 938 (2002), unquestionably requires a finding that the plaintiff did not exhaust all available administrative remedies because she failed to follow the inmate grievances procedures before filing suit in this Court. *See State of Connecticut Department of Correction, Administrative Directive*, 9.6 (1994) and (1998).[2]

In *Porter*, the Supreme Court held unequivocally that it is mandatory for a prisoner to exhaust all available administrative remedies prior to filing suit in every action brought with respect to prison conditions under any federal law; the district court has no discretion to determine otherwise. *Porter*, 534 U.S. at 524. Though *Porter* is clear in its holding, the defendant misstates its effect on the facts before this Court. While *Porter* requires exhaustion, it does not delineate what constitutes "exhaustion." While we disagree with the defendant's argument, we believe that our reasoning and ultimate conclusion

---

[2] The Court takes judicial notice of the State of Connecticut Department of Correction, Administrative Directive 9.6 effective August 1994, and as amended in August 1998. *See Calca v. Keefe*, No. 3:98CV01685, 2001 WL 256170, *4 (D. Conn. Mar. 8, 2001).

3

regarding the issue of exhaustion under section 1997e(a) to be in error as a matter of law and grant the defendant's motion for reconsideration on that issue.

Before discussing the relevant case law that leads this Court to a different conclusion regarding whether the plaintiff satisfied the exhaustion requirement of section 1997e(a), we set forth the factual basis and reasoning underlying our prior ruling.

While incarcerated in a Connecticut prison facility, the plaintiff and defendant engaged in a relationship that led to the defendant's resignation from the DOC and, ultimately, this law suit. Their relationship began to be exposed when, on May 10, 1999, the Complex Warden, Pamela Richards, authorized the commencement of an investigation into the possible "undue familiarity" between the two following a complaint lodged by one of the DOC's cadets. The complaint concerned the defendant's possession of photographs that he had taken from the plaintiff, which the cadet observed. DOC officials responded by questioning the plaintiff about the incident. At that time, she provided the DOC with a statement in which she explained how the defendant came into possession of the photographs. She revealed also additional information regarding other contact that she and her family had with the defendant. The following day, May 11, 1999, the plaintiff's attorney presented DOC officials with numerous cards and "love" letters that the defendant sent to her during her incarceration. She also forwarded several handwritten

4

letters to DOC officials regarding her relations with the defendant. The DOC also questioned the defendant, who denied any undue familiarity with the plaintiff. The investigation, however, proved otherwise, and the defendant voluntarily resigned his position with the DOC.[3]

The issue before the Court, therefore, was whether the actions of DOC officials, coupled with the direct, voluntary cooperation and participation of an inmate in the investigatory process may provide a means of administrative exhaustion outside of those prescribed in the Administrative Directives.[4] We determined,

> [i]n this case, the plaintiff forwarded several handwritten letters to prison officials complaining of the defendant's conduct. Whether such complaints complied with [] Directive 9.6 certainly did not affect the department's reaction to them. The plaintiff's efforts resulted in the department investigating the defendant and his voluntary resignation, followed by her commencement of this lawsuit.
> Connecticut's inmate grievance procedure does not expressly allow an inmate to utilize any procedures for initiating a grievance other than those provided in the [] Directives. In all practicality, however, at least in the present case, the department went forward with an investigation irrespective of whether the plaintiff

---

[3]The defendant and DOC entered into a stipulated resignation agreement whereby the defendant would be permanently foreclosed from any future employment with the DOC.

[4]Two versions of the Directives relevant to this case exist, however, there are no significant differences between the two relevant here. See Directive 9.6 (1994) and (1998). Therefore, we refer to both versions collectively as the Directives, unless otherwise stated.

> followed the proper procedures. Under these circumstances, the department essentially created informal means of pursuing an inmate grievance outside of its prescribed procedures. Consequently, the plaintiff exhausted her administrative remedies by utilizing such means.[] Our conclusion finds support within this Circuit.
> Because the department investigated the plaintiff's complaint, which resulted in the defendant's voluntary resignation, her compliance, or lack thereof, with the prescribed procedures for initiating an inmate grievance under either version of [] Directive 9.6 is not determinative here. *See Heath v. Saddlemire*, No. 9:96CV1998, 2002 U.S. Dist. LEXIS 18869, at *14 (holding that plaintiff satisfied PLRA requirement even if New York's inmate grievance procedure constituted the only satisfactory administrative remedy); *see also Perez v. Blot*, 195 F. Supp. 2d 539, 545-46 (S.D.N.Y. 2002). Accordingly, the plaintiff satisfied the exhaustion of administrative remedy requirement of Section 1997e(a), and to suggest otherwise is patently unfair. *See Saddlemire*, 2002 U.S. Dist. LEXIS 18869, at *14.

*Hock v. Thipedeau*, No. 3:99-CV-1281, 2002 WL 31931948, *1, *2 (D. Conn. 2002).

Our reasoning was based on the fact that, had the plaintiff filed an inmate grievance as set forth in Directive 9.6 based on the same evidence that she provided to DOC investigators, essentially the same process would have occurred; the DOC would have initiated an investigation and questioned those involved, which would have resulted in the defendant's voluntary resignation or his involuntary termination. *See* Directive 9.6. Having stated the factual basis and reasoning of our prior

6

decision, we look now to the relevant case law that leads us to conclude our prior ruling to be in error.

In *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819 (2001), the plaintiff-prisoner filed properly an inmate grievance, but failed to go beyond that after the prison authority denied his claim. The Court reviewed the relevant administrative procedures to see if the administrative authority had the requisite authority to take some responsive action to the plaintiff's complaint, even though that action was not the relief sought by the plaintiff in court. *See Id.* at 736. Finding such authority to exist, the Court held that a prisoner must exhaust the administrative process, as set forth in the administrative procedures, prior to filing suit in Federal Court. The fact that the plaintiff in that case began the grievance process was of no import because he failed to complete the administrative process, which provided various levels of review following the denial of his claim. The case, therefore, was dismissed due to the plaintiff's failure to exhaust administrative remedies under section 1997e(a). *Id.* at 741.

In *Porter*, the Supreme Court reviewed a Second Circuit ruling wherein the Second Circuit determined that section "1997e(a) governs only conditions affecting prisoners generally, not single incidents, such as corrections officers' use of excessive force, actions that immediately affect only particular prisoners." *Porter*, 534 U.S. at 520. The Court reversed the

7

Second Circuit, holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532.

The Court's judgment in *Porter* was based, in part, on Congress' public policy determinations in passing, and later amending section 1997e(a). The Court stated,

> [b]eyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Id.* at 524-25 (citations omitted; internal quotations omitted). Moreover, because section 1997e(a) requires that inmate grievances "be fully pursued prior to filing a complaint in federal court . . . courts must take care not to frustrate the policy concerns underlying [it] by allowing inmate-plaintiffs to file or proceed with lawsuits before exhausting administrative remedies." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled in part on other grounds, Porter v. Nussle*, 534 U.S. 516 (2002).

8

Guided by *Booth* and the public policy considerations set forth in *Porter*, we examine now Connecticut's administrative inmate grievance procedures to see if the administrative authority has the authority to take any action whatsoever in regard to the plaintiff's complaint in this case. *Booth*, 532 U.S. at 736. The Directives specifically set forth the procedures for an inmate to set into motion the grievance process. Both versions require that an inmate grievance "be filed, in writing, on the Inmate Grievance Form." Directive 9.6(10)(A). Further, the Directives delineate what matters are grievable and what matters are not. Directive 9.6(6)(A) provides in relevant part, "[t]he following matters are grievable . . . . 3. Individual employee . . . actions. . . . 4. Formal or informal reprisal for the use of or participation in the Inmate Grievance Procedure. 5. Any other matter relating to . . . conditions of care or supervision. . . ." *Id.* Moreover, grievances that are rejected may be appealed; the Directives provide for three levels of review. *See Calca v. Keefe*, No. 3:98CV01685, 2001 WL 256170, *4 (D. Conn. Mar. 8, 2001).

Because our review of the Directives reveals that the administrative procedure provides the prison officials with the authority to provide some form of relief or take some form of action, whatever that might be, in response to the plaintiff's complaint, she must exhaust all available administrative procedures as set forth in the Directives prior to filing suit in

9

Federal Court. *See Booth*, 532 U.S. at 736. Significantly, the Directives do not provide that exhaustion may occur through merely an inmate's direct, voluntary participating in a DOC investigation, or by voluntarily providing additional information to the DOC beyond that initially sought in its investigation. *See* Directive 9.6. Consequently, such inmate actions, coupled with the DOC's responsive actions, cannot be a means to satisfy the exhaustion requirement. *See Booth*, 532 U.S. at 736; *Calca*, 2001 WL 256170, at *4; Directive 9.6.

Having determined that the plaintiff here was obliged to exhaust the administrative procedures as set forth in the Directives, we look now to see if she fulfilled that obligation, and conclude that she did not. *Casiano v. North Haven Police*, No. 3:97CV2583, 2001 WL 897901 (D. Conn. Aug. 6, 2001); *Calca*, 2001 WL 256170, at *4. Here, the plaintiff admittedly did not follow any of the prescribed means set forth in either version of Directive 9.6. In fact, she knowingly and intentionally chose not to utilize such procedures and, therefore, failed to exhaust administrative remedies.

It is clear that the onus of administrative exhaustion rests upon the inmate. See 42 U.S.C. § 1997e(a); *see also Booth*, 532 U.S. 731; *Beeson v. Fishkill Correctional Facility*, 28 F. Supp. 2d 884, 887 (S.D.N.Y. 1998), *overruled on other grounds, Nussle v. Willette*, 224 F.3d 95 (2d Cir. 2000), *rev'd by Porter v.*

*Nussle*, 534 U.S. 516 (2002); *Casiano*, 2001 WL 897901, at *3; *Calca*, 2001 WL 256170, at *4, *5 (prisoner must avail him or herself of all administrative remedies prior to filing federal suit). The inmate must do this through channels prescribed by the Commissioner of the state in which she is incarcerated. Otherwise, inmates would be induced to circumvent the administrative process by participating in an investigation. *See Booth*, 532 U.S. at 740, 741 (discussing broad exhaustion requirement not meant to induce circumvention of administrative process by limiting relief not offered through that process).

Under Connecticut's administrative scheme, if a complaint is brought to the attention of the DOC and it investigates the matter and makes conclusions based on information provided in part by an inmate, that does not relieve the inmate of her responsibility to follow the proper procedures if she decides to bring a federal action based on such claims. *See generally Booth*, 532 U.S. at 731; *Casiano*, 2001 WL 897901, at *3; *Calca*, 2001 WL 256170, at *4, *5; *See* Directive 9.6. When an inmate makes no attempt to initiate and follow to the end prescribed grievance procedures, any responsive action taken by the DOC to resolve a problem brought to its attention, regardless of its source or who takes part in its resolution, could not be the basis for determining that the exhaustion requirement has been satisfied. *See* Directive 9.6; *see generally Booth*, 532 U.S. at

11

731; *Casiano*, 2001 WL 897901, at *3; *Calca*, 2001 WL 256170, at *4, *5. To determine otherwise would unduly frustrate the public policy underlying section 1997e(a), and render impotent the Directives every time DOC officials questioned and involved an inmate in an investigation, or any time a prisoner, of her own volition, provides information through channels other than the grievance procedure that results in a DOC investigation. *See Porter*, 534 U.S. at 524, 525. Consequently, the plaintiff's Eighth Amendment claim should have been dismissed due to her failure to satisfy the exhaustion requirement of section 1997e(a).

Finally, this Court inquired of the defendant whether his resignation from the DOC, and the fact that the plaintiff sought money damages only, deemed the exhaustion requirement moot, or rendered the administrative process unavailable to her. The defendant argues in his brief to this Court that such an inquiry ignores the holding in *Porter*. We disagree with such a charge because *Porter* does not address what essentially amounts to a futility argument. *See Porter*, 534 U.S. at 524.

*Booth* addressed whether a futility exception may be read into section 1997e(a). *Booth*, 532 U.S. at 736, 741 n.6; *see generally* Meredith McCollum, *The Prison Litigation Reform Act: Should Prisoners Be Required To Exhaust Administrative Remedies When They Seek A Form Of Relief Not Available Under Prison*

12

*Procedures?*, 31 Cumb.L.Rev. 369, 370 n.6 (2001) (stating United States Supreme Court poised to address futility exception in section 1997e(a)). The Supreme Court held, "[u]nder 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing *some form* of relief, even if the process does not make specific provision for monetary relief." *Booth*, 523 U.S. at 736 (emphasis added).

Connecticut's administrative procedure allows clearly for at least some relief for the plaintiff's complaint, had she in fact filed one. Directive 9.6(7) is capable of providing some form of relief to the plaintiff's complaint because "[s]uch remedies may include, but are not limited to: A. Corrective action to rectify the matter being grieved. B. Changes in written policy and procedures or in interpretation or application of written policies and procedures. C. Enforcement of existing policy and procedure. D. Development of policies and procedures pertaining to the grievance."

The defendant's resignation and the plaintiff's prayer for money damages in no way preclude the process from providing some form of relief to the plaintiff. For instance, the DOC might change its written policies or enforce those already in place. This, alone, provides some form of relief under Connecticut's scheme. *See Booth*, 532 U.S. at 736. Because the administrative process, as in Connecticut, provides prison officials with the

13

authority to take some form of action in response to the plaintiff's complaint, had she filed one, the remedial scheme was available to her. Consequently, no futility exception may be read into section 1997e(a) under these circumstances. *Id.* at 741 n.6.

Moreover, assuming that the applicable statute of limitation on the plaintiff's claim has run, our decision would remain the same. This is so because to allow an inmate's federal suit to proceed on that basis, in the absence of fully complying with the administrative procedures, would be tantamount to encouraging inmates to circumvent the administrative process by filing federal suits just prior the expiration of the statute of limitations. *See Porter*, 534 U.S. at 524, 525; *Booth*, 532 U.S. at 740, 741.

**Conclusion**

Because we granted the defendant's motion for reconsideration regarding the issue of whether the plaintiff exhausted all available administrative remedies under section 1997e(a), and concluded that she did not, we vacate our decision of October 29, 2002, only insofar as it pertains to the issue of exhaustion [Doc. 98]. We, therefore, grant the defendant's motion for judgment as a matter of law in that regard [Doc. 102], and deny his motions for reconsideration and judgment as a matter of law or, alternatively, for a new trial [Doc.'s 101 and 102] in all other respects. Specifically, we decline to grant the

14

defendant's motion for reconsideration regarding section 1997e(e), as well as in regard to the sufficiency of the plaintiff's alleged injury. Though we did not address previously the sufficiency of her alleged injury, we decline to do so here because our determination that the plaintiff failed to exhaust all available administrative remedies under section 1997e(a) renders that issue moot. Further, we decline to grant reconsideration concerning the defendant's assertion that the plaintiff failed to plead expressly a violation of a state statute.

Consequently, we set aside the jury's verdict regarding the plaintiff's federal constitutional claim wherein it awarded the plaintiff one dollar in nominal damages and $30,000 in punitive damages [Doc. 96, **Roman Numeral I**].

The Clerk is directed to enter judgment accordingly.

SO ORDERED.

Dated: February 19, 2003
       Waterbury, CT

_____
Gerard L. Goettel
United States District Judge