UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH GIBSON, III | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3-02-cv-1592 (JCH) |
| WARDEN BROOKS, ET AL. | : | |
|     Defendants | : | |
| | : | |
| | : | SEPTEMBER 16, 2004 |

**RULING ON DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT [DKT. NO. 26]**

The plaintiff, Joseph Gibson, is an inmate of the Connecticut Department of Correction and has filed this civil rights action alleging that on September 16, 1999, he was assaulted by another inmate at the Osborn Correctional Institution. Plaintiff claims that the defendants, Warden Brooks, Lieutenant King, and C.T.O. Diefenderfer, failed to prevent the assault and, thus, violated the plaintiff's rights under the Eighth and Fourteenth Amendments of the United States Constitution. Compl. [Dkt. No. 1] at ¶10. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants have moved for summary judgment, arguing that (1) the plaintiff has failed to allege that he exhausted his administrative remedies, (2) the complaint fails to state a claim upon which relief can be granted due to lack of personal participation by two of the defendants, and (3) the defendants are shielded from liability by the doctrine of qualified immunity.

I.  **FACTUAL BACKGROUND**

We consider the facts in the light most favorable to the plaintiff. Gibson alleges that he was a prison informant for the defendants and provided them with information concerning the unlawful or potentially unlawful activities of other inmates. Compl. [Dkt. No. 1] ¶ 3. He alleges that, on September 16, 1999, he was attacked by another inmate wielding a home-made knife with four razor blades attached to it, and that he was seriously injured in the attack. Id. ¶ 7. Gibson further alleges that the defendants had actual knowledge prior to the assault by the other inmate that the inmate presented a threat to Gibson's life, and that the defendants assured him that they would make an appropriate institutional transfer to protect him. Id. ¶ 8. Gibson alleges that the defendants were deliberately indifferent to his safety needs and violated his right to be free from cruel and unusual punishment. Id. ¶ 10.

Gibson also claims that shortly after the assault, while he was hospitalized for his injuries, he confronted one of the defendants, Diefenderfer, about Diefenderfer's failure to prevent the attack. Defendant's Local Rule 56(a)(1) Statement [Dkt. No. 28], Att. A, Gibson Depo. at 24-25. According to Gibson, Diefenderfer acknowledged his failure to protect Gibson and apologized for the incident. Gibson did not pursue further remedies, either against the attacker or against prison officials, with respect to the incident.

On December 15, 1999, Gibson was released. On October 3, 2001, however, he was reincarcerated and has been imprisoned since that date. Defendant's Local Rule 56(a)(1) Statement [Dkt. No. 28], Att. C, Affidavit of Giovanny Gomez at ¶ 4.

Gibson filed his complaint in this case on September 9, 2002. He seeks compensatory and punitive damages as well as attorney fees and costs.

## II.   DISCUSSION

### A.   Introduction

Arguing that Gibson failed to exhaust his administrative remedies, the defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Additionally, defendants argue that Gibson's complaint fails to state a claim upon which relief can be granted with respect to two of the defendants because it does not allege personal participation on the part of those defendants. Finally, defendants claim that all three defendants acted within the scope of their qualified immunity as employees of the State of Connecticut.

### B.   Standard of Review.

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See, FED.R.CIV.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); see also Anderson, 477 U.S. at 256 (1986). The nonmoving must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). Further, a party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of

material fact by presenting contradictory or unsupported statements.  See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).  Nor may he rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

      C.    **The Prison Litigation Reform Act**

The Prison Litigation Reform Act of 1995, 42 U.S.C. §1997e(a) constrains the ability of prisoners to bring federal actions "with respect to prison conditions."  Prisoners cannot pursue §1983 or other federal actions alleging deficiencies in prison conditions "until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e(a).  The statute defines the term "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release or diversionary program."  42 U.S.C. §1997e(h).

The Second Circuit recently clarified the application of the §1997e(a) exhaustion requirement to cases brought by prisoners with respect to prison conditions.  Where "a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies," a three-part inquiry guides the analysis of whether a plaintiff has met the requirements of §1997e(a).  Hemphill v. State of New York, Dkt. No. 02-0164, 2004 WL 1842658, *5 (2d Cir. 2004).  First, it must be

determined whether administrative remedies were available for the purposes of §1997e(a).  Second, the court must consider whether the defendant, by failing to raise or preserve the defense of exhaustion or by inhibiting the ability of the plaintiff to pursue administrative remedies, forfeited or is estopped from raising failure to exhaust as a defense.  Lastly, where administrative remedies were available and the defendant has not forfeited the defense of failure to exhaust, this court must consider whether special circumstances existed to excuse the plaintiff's failure to pursue or exhaust available administrative remedies.  Id.

"'[S]pecial circumstances' may excuse a prisoner's failure to exhaust" otherwise available administrative remedies.  Giano v. Goord, Dkt. No. 02-0105, 2004 WL 1842652, *4, *6 (2d Cir. 2004).  In order to determine whether such circumstances exist, this court must consider whether the defendant's failure to exhaust is justified.  The court must consider in its analysis that "[w]hat is justification in the PLRA context for not following procedural requirements–so that when grievance procedures are no longer available, a §1983 action can be brought–...must be determined by looking at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way."  Giano, 2004 WL at *6.  For example, reasonable reliance on regulations, statutes, or case law might excuse a prisoner's failure to pursue administrative remedies.  Id.  In addition, physical threats made by prison officials might excuse a prisoner's choice to use an alternative approach to filing a grievance rather than comply with administrative procedural requirements.  Hemphill at *8.

### D.  The PLRA's Exhaustion Requirement Applies to Plaintiff

While the term "prison conditions" is left undefined in §1997e(a), the Supreme Court has found that the term does not exclude "single incidents, such as corrections' officers use of excessive force, actions that immediately affect only particular prisoners."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  Indeed, the Court has confirmed that the exhaustion requirement of 42 U.S.C. §1997e(a) applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter, 534 U.S. at 532.  The case at hand undoubtedly falls into this broad category.  Plaintiff alleges that prison officials failed to protect him from potential physical harm perpetuated by fellow inmates.  This allegation is "about prison life" and alleges a wrong committed by prison officials.  There remains the issue of whether the exhaustion requirement applies in light of Gibson's discharge from prison following the events alleged in his complaint.

The Second Circuit has refused to apply the requirements of 42 U.S.C. §1997e(a) to individuals who were incarcerated at the time their claim accrued but filed suit only after they have been released.  Grieg v. Goord, 169 F.3d 165 (2d Cir. 1999).  Grieg filed a prison conditions action following his release, while he was on parole.  The Second Circuit found that the exhaustion requirement in §1997e(a) simply did not apply to a formerly incarcerated individual because the statutory text limited its applicability to "prisoners" and a strict literal interpretation would require finding that the term referred to individuals currently incarcerated.  Grieg, 169 F.3d at 167.

The court rejected defendant's argument that drawing a distinction between current and former prisoners would excuse prisoners from pursuing administrative remedies because they would be able to pursue judicial remedies upon release. The court largely based its conclusion upon its finding that the Prison Litigation Reform Act was intended to limit the number of frivolous lawsuits filed by prisoners for solely "recreational" purposes. Grieg, 169 F.3d at 167. The legislative history included statements by the senators who introduced the bill in the Senate that expressed the concern that prisoners have unique incentives to file numerous frivolous lawsuits. Id. According to a more recent case, "[T]he purpose of the PLRA...was plainly to curtail what Congress perceived to be inmate abuses of the judicial process. . . . To effect this goal, Congress erected an array of procedural barriers designed to make it more difficult for inmates to bring suit in federal court, including what is now codified as section 1997e(a)." Ortiz v. McBride, Dkt. No. 02-0088, 2004 WL 1842644, *7 (2d Cir. 2004) (internal citations omitted). Section 1997e(a) acts as a filter for lawsuits brought by prisoners in an attempt to limit strain on the federal judicial system. The Second Circuit found, however, that "these justifications simply do not apply to individuals who were formerly incarcerated." Grieg, 169 F.3d at 167. Generally, formerly incarcerated individuals have no more incentive nor opportunity to pursue frivolous lawsuits than most people.

The Second Circuit's reasoning in Greig does not, however, apply to individuals, like the plaintiff, who were incarcerated at the time that their claim accrued, were later released from prison, but did not file a lawsuit with respect to prison conditions until

after they were again incarcerated. Gibson is currently a prisoner. Therefore, both a literal reading of section 1997e(a) and the statute's legislative history support the conclusion that the plaintiff is subject to the requirements of section 1997e(a). Therefore, Gibson must allege and provide some evidence that he exhausted any available administrative remedies in order to defeat defendant's motion for summary judgment.

Admittedly, section 1997e(a) creates a rather odd situation in which a person's ability to enforce his or her constitutional rights can be stripped upon incarceration, even where the rights to be enforced were infringed during that person's incarceration on an unrelated conviction. Gibson could have filed suit with respect to the September 16, 1999 incident in the 18-month period during which he was first on parole and later released. Had he filed within that time period, Gibson would not have been subject to the requirements of section 1997e(a). Upon his incarceration on October 3, 2001, however, Gibson became, once again, a "prisoner," subject to the PRLA's requirement that he exhaust any available administrative remedies prior to filing a lawsuit with respect to prison conditions. Gibson is a prisoner and was a prisoner on the date that he filed this suit, September 9, 2002. That his status as a prisoner bears directly on his ability to bring a lawsuit alleging a violation of constitutional rights is a result of congressional intention expressed in clear statutory language.

The Second Circuit has applied the section 1997e(a) exhaustion requirement to a prisoner who was released and re-incarcerated prior to filing a lawsuit with respect to prison conditions. <u>Berry v. Kerik</u>, 366 F.3d 85 (2d. Cir. 2003) (dismissing with prejudice

two section 1983 claims brought by an inmate of a municipal prison who had failed to exhaust administrative remedies). The court concluded that "because, at the time he filed his two lawsuits, [the plaintiff] was reincarcerated *in the custody of the agency against which he had grievances*, the [New York City Department of Corrections] administrative remedies were available." Berry, 366 F.3d at 87 (emphasis added). Indeed, "[t]he fact that his two reincarcerations were for offenses different from the one for which he was confined when his grievances arose does not excuse failure to exhaust." Berry, 366 F.3d at 88; see also Foss v. Booker, Civ. No. 3:02CV1650 (PCD) (Ruling, April 8, 2003). Thus, exhaustion of administrative remedies is required in this case.

### E.     Plaintiff's Allegation He Made an Informal Oral Complaint Creates a Triable Issue

According to the Department of Corrections Administrative Directive No. 9.6–Inmate Grievances (July 23, 1999), the actions of individual employees and inmates are actionable under the grievance procedure. Defendant's Local Rule 56(a)(1) Statement [Dkt. No. 28], Att. D., Administrative Directive No. 9.6–Inmate Grievances, July 23, 1999 ["Administrative Directive"] at ¶ 6.A.3. Gibson concedes that he did not file a written grievance under the Administrative Directive. He claims, however, that he did exhaust available administrative remedies by pursuing an informal resolution of his claim. Specifically, Gibson claims to have verbally complained about the failure to protect Gibson and the resulting assault to C.T.O. Diefenderfer. Defendant's Local Rule 56(a)(1) Statement [Dkt. No. 28], Att. A, Plaintiff's Depo. at 15.

The State Department of Corrections ("DOC") grievance procedure anticipates and requires attempts at informal resolution prior to filing formal grievances. Defendant's Local Rule 56(a)(1) Statement [Dkt. No. 28], Att. D, Administrative Directive at ¶ 9. Specifically, the Directive requires that "[a]n inmate shall attempt to seek informal resolution prior to filing an inmate grievance." Id. at ¶ 9 (emphasis added). Informal resolution can be accomplished by "personal contact with staff able to resolve the matter or utilization of the Inmate Request System." Id. at ¶ 9 (emphasis added). Where an inmate chooses to use the Inmate Request System, he must submit an Inmate Request Form to the appropriate employee. Id. at ¶ 9.

Gibson argues that informal means by personal contact alone can be used to meet the administrative exhaustion requirement. Attempts at informal resolution, however, constitute only the first step in the DOC's grievance procedure. According to the Administrative Directive, written grievances must be filed on an Inmate Grievance Form within thirty days of the occurrence. Id. at ¶ 10. However, the grievance procedure provides for a written grievance only upon failure to achieve an informal resolution. Id. at ¶ 10 ("A grievance may be rejected for failure to attempt informal resolution."). An inmate must include a copy of his Inmate Request Form and the prison employee's response to that Request Form with his or her Inmate Grievance Form. Id. at ¶ 10. Therefore, use of the Inmate Request System is a requirement for later bringing a formal complaint. Where a prisoner does not encounter the need to file a formal complaint, however, he is not required to utilize the Inmate Request System

11

and is free to choose one of two approaches to informal resolution: "personal contact with staff able to resolve the matter," or the Inmate Request System. Id. at ¶ 9.

The Second Circuit has recognized that the use of informal grievance procedures suffices to meet the requirement of exhaustion where the informal procedures result in resolution of the complaint. See Marvin v. Gourd, 255 F.3d 40, 43 n. 3 (2d Cir. 2001). In the Marvin case, the Second Circuit suggested that the plaintiff had satisfied the exhaustion requirement by overturning a prohibition on correspondence with his attorney through informal channels. Id. Gibson also relies on another Second Circuit ruling, Ortiz v. McBride, 323 F.3d 191 (2d Cir. 2003) ("Ortiz I"). That opinion left open the possibility that a plaintiff might have exhausted available remedies where the plaintiff filed written grievances without receiving a response and where the plaintiff claimed that prison officials discouraged or prevented him from pursuing his administrative claims further. Ortiz, 323 F.3d at 195. The issue was resolved when the Second Circuit returned to the Ortiz case this summer and held that Ortiz' oral complaint did not suffice to exhaust a claim because his oral complaint was "to no avail." Ortiz v. McBride, 2004 WL 1842644, *4 (2d Cir. 2004) ("Ortiz II"). However, the court distinguished another claim as exhausted, which claim Ortiz did not pursue through all administrative levels after having obtained a "favorable determination" at an intermediate stage. Id. Ortiz II clearly suggests that a favorable determination of an inmate's claim at one level of the grievance procedure satisfies the exhaustion requirement without resort to higher levels.

In Ortiz II, the Second Circuit cited to a Tenth Circuit decision in which a prisoner who had succeeded in obtaining informal relief had no more need to pursue formal procedures. Ross v. County of Bernalillo, 365 F.3d 1181, 1187 (10th Cir. 2004) (cited in Ortiz, 2004 WL 1842644, *4). Where no further relief is available, a prisoner "need not engage in entirely fruitless exercises." Id. The Tenth Circuit concluded that "[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases. When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete." Id.

Citing the Tenth Circuit's analysis, the Second Circuit, in Ortiz II, agreed that a plaintiff may exhaust his claim without appealing to the highest level of an administrative grievance procedure where the plaintiff achieves a favorable determination at an initial or intermediate stage of the process.[1] Ortiz, 2004 WL 1842644, *4. The prisoner remains able to bring a claim in federal court in order to

---

[1] Whether an administrative process provides the same remedies that a judicial process might is not determinative. Prisoners are, of course, required to exhaust their claims even where the remedies sought in federal court are not available from the applicable administrative body. Booth v. Churner, 532 U.S. 731, 741 (2001). However, "one 'exhausts' processes, not forms of relief." Booth, 532 U.S. at 739. Gibson was not required to seek unavailable remedies in the DOC's administrative process. He accessed the available grievance procedure, made his claim, and prevailed on that claim. As such, he exhausted. See Ortiz II, at *4 (finding that use of a grievance procedure to reverse an administrative decision subjecting a prisoner to solitary confinement constituted exhaustion permitting an inmate to pursue a lawsuit for money damages); see also Ross, 365 F.3d at 1185 (finding that use of an informal process to procure a shower mat constituted exhaustion permitting an inmate to pursue a lawsuit for money damages).

contest failure to supplement or to implement[2] the favorable ruling despite the fact that the prisoner did not appeal the ruling to the highest level in the inmate grievance system.

In this case, taking the facts in the light most favorable to the plaintiff, Gibson pursued the first step required by DOC's grievance procedure.  He has created a genuine issue of material fact as to whether he pursued an informal resolution and received a favorable ruling.  According to Gibson, Diefenderfer acknowledged wrongdoing.  Defendant's Local Rule 56(a)(1) Statement [Dkt. No. 28], Att. A,  Plaintiff's Depo. at 24-25.  Gibson could not have hoped for any further determination by then filing a written grievance.  Therefore, as the Second Circuit found in Ortiz II, with respect to Gibson's successfully exhausted claims, "inasmuch as he obtained a favorable determination regarding his [] claim, no such further appeal was required." Ortiz, 2004 WL 1842644, *4.

Because Gibson has presented evidence that he, through personal contact with prison staff, pursued an informal remedy for his grievance and exhausted the remedies that could be granted by the Department of Correction's Inmate Grievance Procedure, this court cannot find, as a matter of law, that Gibson failed to exhaust his claim.  The

---

[2] Recently, the Second Circuit confirmed that where a prisoner pursues administrative remedies and receives a favorable ruling, further use of administrative remedies are not available because one cannot appeal a ruling or administrative determination in one's own favor.  Abney v. McGinniss, No. 02-0241, 2004 WL 1842647, *5 (2d Cir. 2004).  Where the administrative ruling is not implemented, the prisoner may seek to implement the ruling by pursuing his claim in federal court.  Id.

question of whether Gibson made an informal complaint to Diefenderfer remains a question of fact to be determined by a jury.

### F. Personal Participation

The court next turns to defendants' argument that Brooks and King are entitled to summary judgment because they did not personally participate in the alleged failure to protect the plaintiff. An individual is not subject to liability under section 1983 "[a]bsent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates." Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). Therefore, Gibson must provide some evidence that King and Brooks were personally involved.

Gibson alleges that, on Monday, September 13, 1999, he informed Diefenderfer that he believed he was the target of a planned assault by four members of the "Latin Kings." According to Gibson, Diefenderfer agreed to "take care of it." Gibson further claims that he repeated his complaints every day between that Monday and Thursday, September 16, when he was assaulted. Defendant's Local Rule 56(a)(1) Statement [Dkt. No. 28], Att. A, Plaintiff's Depo. at 15–16. In his Brief in Opposition to Motion for Summary Judgment, Gibson claims that "[h]is statements to defendant Diefenderfer were made in the presence of defendant King and concerned a matter about which defendant King was obliged to report to defendant Brooks," but provides no evidence to

15

support this statement.  Brief in Opposition to Motion for Summary Judgment [Dkt. No. 32].  Local Rule 56(a) requires that an opponent to a Motion for Summary Judgment provide citations to either affidavits or admissible evidence to support the statements of fact alleged by the party.  D.CONN. LOCAL R. CIV. P. 56(a)(3).  While Gibson's Brief in Opposition to Motion for Summary Judgment claims that defendant King was present at this conversation[3], plaintiff conceded at his deposition that the conversation took place between Gibson and Diefenderfer and that no other person was present.  Id.  According to his deposition, Gibson has "assumed" that King had knowledge of the conversation "because a lot of times when [he] met with [Diefenderfer], Lieutenant King would be there and [Diefenderfer] would report back to him."  Id. at 17.

    Gibson testified that King was not present at the alleged conversation with Diefenderfer.  Defendant's Local Rule 56(a)(1) Statement, [Dkt. No. 28] Plaintiff's Depo. at 16.  He speculated that King had knowledge of the alleged events because "a lot of times" when Gibson met with Diefenderfer, Diefenderfer would report to King.  Defendant's Local Rule 56(a)(1) Statement, [Dkt. No. 28] Plaintiff's Depo. at 16.  A party may not, however, rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).  This inference would be insufficient evidence in the face of a summary judgment motion supported by affidavits claiming personal knowledge contrary to the inference Gibson would like the court to draw.  Gibson has failed to present sufficient evidence to create a genuine

---

[3] Counsel cites no evidence to support this assertion.

issue of material fact with respect to the personal involvement of King as to all claims asserted against him and therefore his Motion for Summary Judgment is granted.

On the other hand, Brooks' affidavit includes admissible evidence to support Gibson's allegation that Brooks personally participated in the alleged failure to protect Gibson from a known danger. According to the affidavit, when prison officials received information regarding threats to the safety of inmates, "it was the practice at Osborn Correctional Institution for officers to report such matters to [Brooks] contemporaneously for [his] review and approval." Affidavit of Leslie Brooks [Dkt. No. 31] at ¶ 5. This is admissible evidence to prove that, with respect to the alleged events of September 1999, Diefenderfer shared Gibson's fear for his safety with Brooks and solicited Brooks' "review and approval" prior to acting on that fear. "Evidence of the habit of a person or of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." FED. R. EVID. 406. Here, the court is provided with something more than the plaintiff's assumption or inference to support the factual conclusion that Brooks indeed personally participated in the alleged conduct. The evidence creates a genuine issue of material fact with respect to Brooks' alleged participation.

### G. Qualified Immunity

Because we have found for King on the question of personal participation, we need only consider whether Diefenderfer and Brooks are entitled to qualified immunity. A prison official cannot be held liable for official acts so long as "his conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine the validity of the claim of qualified immunity, this court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999); see also Wilson v. Layne, 526 U.S. 603, 609 (1999).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eight Amendment." Farmer v. Brennan, 511 U.S. 825, 829 (2004). Gibson alleges in his complaint that "[t]he defendants had actual knowledge prior to the [September 19, 1999 assault] that the assailant presented an actual and immediate threat to the plaintiff's life", but that the defendants "intentionally, or with deliberate indifference, did not [protect the plaintiff] and thereby proximately caused the plaintiff's injuries." Complaint [Dkt. No. 1] ¶ 8. Gibson's allegation that Diefenderfer knew that Gibson had good reason to fear that inmates in his cell block planned to murder him, but that Diefenderfer and Brooks failed to act to prevent an imminent assault, constitutes a claim that Diefenderfer and Brooks violated plaintiff's Eighth Amendment rights.

We next consider whether Gibson's Eight Amendment right to be protected from the September 19, 1999 assault was clearly established at the time of Diefenderfer and Brooks' alleged failure to protect Gibson from harm. See Wilson, 526 U.S. at 614. An official cannot benefit from the doctrine of qualified immunity if he had "'fair warning'

that his conduct deprived his victim of a constitutional right." Hope v. Pelzer, 536 U.S. 730, 740 (2002). Viewing the disputed facts in the light most favorable to the plaintiff, Diefenderfer and Brooks are not entitled to qualified immunity. In 1994, the Supreme Court found that "a deliberately indifferent failure to protect petitioner's safety" constituted "a violation of petitioner's Eight Amendment rights." Farmer, 511 U.S. at 831. Undoubtedly, Diefenderfer and Brooks had notice that deliberate indifference to a substantial risk of an attempt to murder Gibson would constitute a violation of the Gibson's Eighth Amendment rights. Therefore, they are not entitled to qualified immunity in this case. While defendants urge the court to find that Diefenderfer and Brooks cannot be found liable under the Eight Amendment because they had no knowledge of a risk to Gibson's safety, that remains a question of fact to be determined by a jury.

### III.     CONCLUSION

For the reasons discussed above, the defendants' motion for summary judgment is GRANTED with respect to King and DENIED with respect to Diefenderfer and Brooks.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 16th day of September, 2004.

/s/ Janet C. Hall

Janet C. Hall
United States District Judge