# ATTACHMENT A

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

---

### DOCKET NO. 05-3409-cv

---

**JOSEPH GIBSON, III,**

**PLAINTIFF-APPELLANT,**

**- VS -**

**WARDEN BROOKS and C.T.O. DIEFENDERFOR,**

**DEFENDANTS-APPELLEES**

---

On Appeal From The United States District Court
For The District of Connecticut
(Hon. Warren W. Eginton, U.S.D.J.)

---

**BRIEF OF PLAINTIFF-APPELLANT**
**With Special Appendix**

---

JOHN R. WILLIAMS
51 Elm Street
New Haven, CT 06510
(203) 562-9931
Fax: (203) 776-9494
E-Mail: jrw@johnrwilliams.com

*To Be Argued By:*
JOHN R. WILLIAMS, ESQ.

# T A B L E   O F   C O N T E N T S

P a g e

TABLE OF AUTHORITIES                                         ii

STATEMENT OF JURISDICTION                                     1

ISSUE PRESENTED                                               2

STATEMENT OF THE CASE                                         3

     A.   NATURE OF THE CASE                              3

     B.   COURSE OF PROCEEDINGS                            4

     C.   DISPOSITION BELOW                                5

STATEMENT OF FACTS                                            6

SUMMARY OF ARGUMENT                                           8

ARGUMENT                                                      9

     I    STANDARD OF REVIEW                               9

     II   BECAUSE THERE CLEARLY WAS NO MANIFEST
          NECESSITY FOR A MISTRIAL IN THIS CASE,
          THE DISTRICT COURT ABUSED ITS DISCRETION
          IN ORDERING A MISTRIAL *SUA SPONTE*           10

     III  THIS APPEAL IS NOT RENDERED MOOT BY THE
          FACT THAT A NEW TRIAL TOOK PLACE AFTER
          THE MISTRIAL                                  12

CONCLUSION                                                   15

SPECIAL APPENDIX                                             16

     CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED   17

     JUDGMENT                                         18

CERTIFICATION OF SERVICE                                     19

i

# T A B L E   O F   A U T H O R I T I E S

P a g e

Arizona v. Washington, 434 U.S. 497, 506 (1978) . . . . . . . . . 11

Cosme v. Hospital Pavia, 922 F.2d 926, 929 (1st Cir. 1991) . . 14

Dennin v. CIAC, 94 F.3d 96 (2nd Cir. 1996) . . . . . . . . . . 14

Deshawn E. V. Safir, 156 F.3d 340 (2nd Cir. 1998) . . . . . . . . 14

Greate Bay Hotel & Casino v. Tose, 34 F.3d 1227 (3rd Cir. 1994) 13

Harpster v. State of Ohio, 128 F.3d 322 (6th Cir. 1997) . . . . 10, 12

Jenkins v. Haubert, 179 F.3d 19, 28-29 (2nd Cir. 1999) . . 5, 7, 8

Johnson v. Karnes, 193 F.3d 589 (6th Cir. 1999) . . . . . . . . 13

Jonesfilm v. Lion Gate International, 299 F.3d 134 (2d Cir. 2002) 10

Love v. Morton, 112 F.3d 131 (3rd Cir. 1997) . . . . . . . . . 13

Muhammad v. City of New York Dept. Of Corrections, 126 F.3d 119
(2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 14

New England Health Care Employees Union v. Mount Sinai Hospital, 65
F.3d 1024, 1029 (2nd Cir. 1995) . . . . . . . . . . . . . . . 15

Russman v. Board of Education, 260 F.3d 114 (2nd Cir. 2001) . . 14

United States v. Beeks, 266 F.3d 880 (8th Cir. 2001) . . . . . . 10

United States v. Bonas, 344 F.3d 945 (9th Cir. 2003) . . . . . . 10, 12

United States v. Construction Products Research, Inc., 73 F.3d 464,
469 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 15

United States v. Jorn, 400 U.S. 470, 514 (1971) . . . . . . . . 12

United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824) . . 11

United States v. Ruggiero, 846 F.2d 117, 124 (2nd Cir. 1988) . 10

Zervos v. Verizon New York, Inc., 252 F.3d 163 (2d Cir. 2001) . 10

# STATEMENT OF JURISDICTION

This action, alleging deliberate indifference by a warden and a corrections officer to the safety needs of a sentenced prison inmate, in violation of the Eighth Amendment,[1] was filed in the United States District Court for the District of Connecticut on September 9, 2002.[2]

Judgment entered on all issues on June 2, 2005.[3] This appeal was filed on June 22, 2005.[4]

Jurisdiction of this court is based upon 28 U.S.C. §1291.

---

[1]  Joint Appendix, pp. 19-21.

[2]  Joint Appendix, p. 6.

[3]  Joint Appendix, p. 17.

[4]  Joint Appendix, p. 17.

**I S S U E    P R E S E N T E D**

Did the district court abuse its discretion in
declaring a mistrial during the first trial of
this action?

## S T A T E M E N T   O F   T H E   C A S E

### A.    NATURE OF THE CASE

Joseph Gibson was a sentenced inmate housed at the Osborn Correctional Institution in Somers, Connecticut, at the time of the events at issue in this case. The defendant Diefenderfor was a Corrections Treatment Officer in that facility. "[H]is designation at the time was an intel officer for the facility. He would gather information and intelligence on gangs within the facility...." (5/23/05 Transcript, p. 43) The defendant Brooks was the Warden. Although the issue was disputed at trial, defendant Brooks furnished the court with an affidavit during pretrial proceedings in which he declared that it was his practice to require officers like Diefenderfor to report events of the kind involved in this case directly and contemporaneously to him. (5/23/05 Transcript, pp. 47-48) A third defendant, Lieutenant King, was removed from the litigation on summary judgment prior to trial. (Joint Appendix, pp. 10, 128-29)

The plaintiff was recruited by defendant Diefenderfor to act as an informant against the Latin Kings gang inside the prison. He contended that, after having engaged successfully in those activities for some time, he was targeted for death by a group of enforcers for the Latin Kings called The Terminators. He alleged that he reported to Diefenderfor the names of four Terminators in the prison who

3

planned to kill him and that Diefenderfor arranged to have three of the four transferred to other prisons.  On September 16, 1999, while he was on an institutional telephone attempting to persuade Diefenderfor to protect him from the fourth inmate, that inmate attacked him from behind, slashing his throat and almost killing him.

The plaintiff brought this action pursuant to the Eighth Amendment and 42 U.S.C. § 1983, alleging that the assault upon him was proximately caused by the defendants' deliberate indifference to his serious safety needs.  (Joint Appendix, pp. 19-21)

## B.  COURSE OF PROCEEDINGS

The defendants initially moved to dismiss the action for failure to allege exhaustion of administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997c(a).  (Joint Appendix, p. 23) Noting that failure to exhaust administrative remedies in a prison case ordinarily is an affirmative defense, Jenkins v. Haubert, 179 F.3d 19, 28-29 (2nd Cir. 1999), and that the question could not be determined from the face of the Complaint, the court denied that motion.  (Joint Appendix, pp. 24-30)

After conducting some discovery, the defendants then moved for summary judgment on the same, and other, grounds.  (Joint Appendix, p. 34) That motion was denied, except as to Lt. King, on September 16, 2004.  (Joint Appendix, pp. 113-31)

The case thereafter was tried to a jury commencing on March 21,

4

2005.   (Joint Appendix, p. 13; 3/21/05 Transcript, pp. 1, *et seq.*)
On the second day of trial, the jury sent a note to the court
expressing fears about the case and the court, *sua sponte*, declared
a mistrial.   (Joint Appendix, pp. 13-14, 287-89; 3/22/05 Transcript,
pp. 1, *et seq.*)

Two months later, the case was tried a second time.  The jury
returned a verdict in favor of both defendants.  (Joint Appendix, pp.
16-17, 296-97; 5/23/05 Transcript, pp. 1, *et seq.*; 5/24/05 Transcript,
pp. 1, *et seq.*; 5/25/05 Transcript, pp. 1, *et seq.*)


**C.    DISPOSITION BELOW**

After the order of mistrial on March 22, 2005, the case was tried
a second time and ended with a verdict in favor of both defendants.

5

### S T A T E M E N T   O F   F A C T S

At the time of trial, the plaintiff was a 32-year-old resident of Meriden, Connecticut, employed as a mover. (3/21/05 Transcript, pp. 22-23) In 1999, he was a state prisoner, serving a sentence for possession of stolen property. (Id., p. 24) He was summoned to the office of the defendant Diefenderfor and asked to work as a Confidential Informant concerning drugs, gang activity and weapons. (Id., pp. 25-28) Reluctantly, he agreed. (Id., pp. 27-28) The defendant's chief interest was in the activities of the Latin Kings, a prison-based gang with about 200 members at the Osborn institution. (Id., p. 29) The plaintiff reported to him on these matters at least once a week thereafter. (Id., p. 31) During the ensuing nine months, the plaintiff was able to assist in the confiscation of as many as 60 weapons in the institution and to avert five potentially fatal assaults. (Id., pp. 32-35) Diefenderfor promised the plaintiff protection from inmate retaliation. (Id., p. 36)

The assassination unit of the Latin Kings in Connecticut, and in the prison, was known as the Terminators. (Id., p. 38) There came a time when the plaintiff learned that he had been branded a "snitch" and that the Terminators were going to kill him. (Id., p. 40) He immediately reported this information to Diefenderfor, providing him the names of the four designated hit men. (Id., p. 41) That was September 13, 1999. (Id., pp. 43-44)

6

The first hit man was transferred out of the prison that day. (Id., p. 44) The plaintiff met with Diefenderfor every day that week, pressing his urgent request for help. (Id., p. 45) On September 16, 1999, two of the remaining three hit men were removed to segregation. (Id., pp. 46-48) That left one hit man remaining, Raymond Figueroa. (Id., p. 48)

At approximately 2:45 on the afternoon of September 16, 1999, the plaintiff went to an institutional telephone to call Diefenderfor and ask him again for protection. As he did so, he "felt the rub on my neck and I put my hand there and there was just blood, you know, spitting out of my neck...." (Id., pp. 48-49) The plaintiff has just heard Diefenderfor's voice on the telephone when the slashing occurred. (Id., p. 50) "I saw Figueroa running down the stairway to...ditch the weapon." (Ibid.)

Sixteen staples were required to close the wound. (Id., p. 53)

Sitting at the plaintiff's bedside in the hospital to which he had been taken by ambulance, Diefenderfor expressed his remorse: "I screwed up. I should have got him out sooner." (Id., p. 54)

The jury which the plaintiff had selected to judge his case in March, 2005, did not render a verdict. When court convened the second day of trial, the court received a note from jurors expressing "profound fear" and, in response, on its own motion, ordered a mistrial. (Joint Appendix, pp. 13-14, 284-89; 3/22/05 Transcript, pp. 1, *et seq.*)

7

## S U M M A R Y   O F   A R G U M E N T

1.  The district court clearly abused its discretion in ordering a mistrial in this case, since the jury's reported discomfort or fear alone provided no basis whatever for concluding that it was incapable of rendering a fair and impartial verdict in the action.

2.  This appeal is not rendered moot by the subsequent retrial of the case before a different jury, because the plaintiff was unfairly and unreasonably deprived of his Seventh Amendment right to a trial before the jury he had selected.

**A R G U M E N T**

## I     STANDARD OF REVIEW

Although the issue is not entirely free from doubt, *see, e.g.,* United States v. Beeks, 266 F.3d 880 (8th Cir. 2001) (hinting at a *de novo* standard), the standard of review for an appeal challenging the granting of mistrials generally is considered to be whether the district court abused its discretion in finding a "manifest necessity" for granting a mistrial.     United States v. Bonas, 344 F.3d 945, 948 (9th Cir. 2003); Harpster v. State of Ohio, 128 F.3d 322, 328 (6th Cir. 1997); United States v. Ruggiero, 846 F.2d 117, 124 (2nd Cir. 1988).

"A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or clearly erroneous factual finding – cannot be located within the range of permissible decisions."     Zervos v. Verizon New York, Inc., 252 F.3d 163, 169 (2d Cir. 2001); Jonesfilm v. Lion Gate International, 299 F.3d 134, 139 (2d Cir. 2002).

9

## II   BECAUSE THERE CLEARLY WAS NO MANIFEST NECESSITY FOR A MISTRIAL IN THIS CASE, THE DISTRICT COURT ABUSED ITS DISCRETION IN ORDERING A MISTRIAL *SUA SPONTE*

"[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.   They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere.   To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes."   <u>United States v. Perez</u>, 22 U.S. (9 Wheat.) 579, 580 (1824).   "[T]he key word 'necessity' cannot be interpreted literally; instead...we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate."   <u>Arizona v. Washington</u>, 434 U.S. 497, 506 (1978).

In the present case, nothing untoward had happened during the trial.   The evidence of both sides was presented in a straightforward and noncontentious manner.   There were no courtroom disputes of any significance.   Nothing unusual happened to or among any of the jurors, so far as is known.   The jury became frightened, apparently, because of the nature of the facts in the case.   However, those facts were not going to change at a retrial and the court apparently gave no consideration to the necessity or desirability of increased security

10

precautions.   Indeed, none was invoked at the second trial.

The court's determination that a mistrial was "necessary" in this case, given the strong judicial policy favoring the right of parties to have their cases decided by the juries they have selected, certainly constituted a "clearly erroneous factual finding" sufficient to make the court's ruling an abuse of discretion.   The decision to grant a mistrial must be "temper[ed]...by considering the importance to the [party] of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate."   United States v. Jorn, 400 U.S. 470, 514 (1971).   Although Jorn was based on a Sixth Amendment analysis, the doctrine seems equally appropriate in a Seventh Amendment context.   The right to a jury trial does in fact encompass the right to be tried by the particular jury one has selected absent compelling circumstances requiring that the cause be submitted to a different one.[5]

"The federal law governing manifest necessity...shuns categorical justifications for mistrials.   Even if counsel violates a pre-trial order, manifest necessity must be determined by looking at all the circumstances of the case."   Harpster v. State of Ohio, 128 F.3d 322, 329 (6th Cir. 1997).   In United States v. Bonas, 344 F.3d 945 (9th Cir.

---

[5]
See Meskill, J., dissenting in United States v. Mastrangelo, 662 F.2d 946, 953 (2nd Cir. 1981), noting the right of a defendant in a criminal case `to have the trial concluded by a particular tribunal,' citing Arizona v. Washington, 434 U.S. at 505.

2003), the court found an abuse of discretion in the granting of a mistrial because the employers of four jurors had refused to pay their salaries for the days of jury duty. The facts of that case are not unlike those here. There was in that case, and there is in this one, simply nothing in the record to suggest that the unhappiness or concerns of the jurors would prevent them from performing their duties as instructed by the court. *See also* <u>Johnson v. Karnes</u>, 193 F.3d 589 (6th Cir. 1999) (no manifest necessity for mistrial when defense counsel introduced improper evidence); <u>Love v. Morton</u>, 112 F.3d 131 (3rd Cir. 1997) (no manifest necessity when mother-in-law of trial judge died).

### III   THIS APPEAL IS NOT RENDERED MOOT BY THE FACT THAT A NEW TRIAL TOOK PLACE AFTER THE MISTRIAL

In <u>Greate Bay Hotel & Casino v. Tose</u>, 34 F.3d 1227, 1235, fn. 14 (3rd Cir. 1994), the court observed with respect to the appellant's contention "that the court acted prematurely in declaring a mistrial" that "the only possible remedy which we could grant even if the court did act prematurely would be to grant a new trial. Of course, the district court did grant a new trial." That observation raises the obvious question present in this case, whether there is anything this court can do about the lower court's apparent error.

The only case which seems to have considered the mootness

12

question in the context of the allegedly erroneous grant of a mistrial

in a civil case is <u>Navarro de Cosme v. Hospital Pavia</u>, 922 F.2d 926,

929 (1st Cir. 1991), where the court held: "We note that in a civil

case, the remedy for a wrongfully declared mistrial is a second trial.

Here, the Cosmes subsequently received a second trial.  However, since

the Cosmes claim the mistrial was an instance of alleged bias by the

district court, their claim is not rendered moot for lack of a

remedy...."

In federal courts, mootness is jurisdictional so that the court

is compelled to dismiss any action which is truly moot and not within

one of the limited exceptions to the doctrine.  *E.g.*, <u>Deshawn E. V.</u>

<u>Safir</u>, 156 F.3d 340 (2nd Cir. 1998); <u>Dennin v. CIAC</u>, 94 F.3d 96 (2nd

Cir. 1996).  The common exception to mootness are those cases which

are capable of repetition yet evade review because the challenged

action is of such short duration that the issue cannot be litigated

fully and there is a reasonable expectation that the same complainant

will be subjected to the same action again.  <u>Russman v. Board of</u>

<u>Education</u>, 260 F.3d 114 (2nd Cir. 2001); <u>Muhammad v. City of New York</u>

<u>Dept. Of Corrections</u>, 126 F.3d 119 (2nd Cir. 1997).

The first prong of that test obviously applies here, when the

injury was completed at the moment it occurred[6] and the trial was

---

[6]

Thus, this is not a case in which a `prompt application for
a stay pending appeal can preserve the issue for appeal,'
since the injury was concluded the moment the jury was
discharged.  <u>The Freedom Party of New York v. The New York</u>
<u>State Board of Elections</u>, 77 F.3d 660, 663 (2nd Cir. 1996).

13

scheduled at the same time and actually conducted within two months. The second prong, equally obviously, does not apply because this case involves the issue of mootness in relation to lower court error rather than in relation to the wrongdoing of an adverse party.

There is, however, a related concept which does leave this court with jurisdiction. "[S]o long as the appellant retains some interest in the case, so that a decision in its favor will inure to its benefit, its appeal is not moot." New England Health Care Employees Union v. Mount Sinai Hospital, 65 F.3d 1024, 1029 (2nd Cir. 1995); United States v. Construction Products Research, Inc., 73 F.3d 464, 469 (2nd Cir. 1996). In this case, because of the district court's manifest error in declaring a mistrial, the plaintiff was deprived of his Seventh Amendment right to have his cause decided by the jury he had selected. Although he did eventually get a trial, that trial was before a jury not his first choice. He lost that trial, and understandably believes he would have won his case had the jury originally selected been permitted to decide it. He cannot recapture that jury, but he can be given the lesser compensation of another attempt at trying his case before a favorably-disposed jury. Thus, the plaintiff does retain a real interest in this case, a decision in his favor certainly will inure to his benefit, and the case is not moot.

14

# C O N C L U S I O N

The judgment below should be reversed.   This case should be remanded to the district court for a new trial.


Respectfully submitted:

JOHN R. WILLIAMS
51 Elm Street
New Haven, CT 06510
(203) 562-9931
Fax: (203) 776-9494
E-Mail: jrw@johnrwilliams.com
Attorney for Appellant

15

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

### DOCKET NO. 05-3409-cv

_____

**JOSEPH GIBSON, III,**

**PLAINTIFF-APPELLANT,**

**- VS -**

**WARDEN BROOKS and C.T.O. DIEFENDERFOR,**

**DEFENDANTS-APPELLEES**

_____

On Appeal From The United States District Court
For The District of Connecticut
(Hon. Warren W. Eginton, U.S.D.J.)

_____

**SPECIAL APPENDIX**

_____

JOHN R. WILLIAMS
51 Elm Street
New Haven, CT 06510
(203) 562-9931
Fax: (203) 776-9494
E-Mail: jrw@johnrwilliams.com
Attorney for Appellant

16

#109

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2005 JUN -2 P 2: 17

Joseph Gibson, III                                        DISTRICT COURT

v.                                                    3:02CV1592 WWE

Warden Brooks,
Lieutenant King and
C.T.O. Diefenderfor

### JUDGMENT

This cause came on for trial before a jury and the Honorable Warren W. Eginton, Senior United States District Judge.  On May 25, 2005, after deliberation, the jury returned a verdict in favor of the defendants Warden Brooks and C.T.O. Diefenderfor.  On September 17, 2004 defendant Lieutenant King was granted summary judgment.

Therefore, it is ORDERED and ADJUDGED that judgment is entered for the defendants and the case is closed.

Dated at Bridgeport, Connecticut, this 2nd day of June, 2005.

KEVIN F. ROWE, Clerk

By_____
           Deputy Clerk

Entered on Docket  6/2/05

18

## CERTIFICATION OF SERVICE

On October 11, 2005, copies hereof were mailed via First Class United States Mail, postage prepaid, to Robert F. Vacchelli, Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105.

JOHN R. WILLIAMS

19