# ATTACHMENT B

# 05-3409-CV

*To Be Argued By:*
ROBERT F. VACCHELLI
Assistant Attorney General

## IN THE
## United States Court of Appeals
### FOR THE SECOND CIRCUIT

**JOSEPH GIBSON, III,**
*Plaintiff-Appellant*

v.

**WARDEN BROOKS AND C.T.O. DIEFENDERFOR,**
*Defendants-Appellees*

**LT. KING,**
*Defendant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR DEFENDANTS-APPELLEES
## WITH ATTACHED APPENDIX

RICHARD BLUMENTHAL
ATTORNEY GENERAL

ROBERT F. VACCHELLI
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105
(860) 808-5450

## TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES ....................................... ii

TABLE OF AUTHORITIES ......................................... iii

COUNTER-STATEMENT OF THE FACTS ................................ 1

STANDARD ON REVIEW ........................................... 7

SUMMARY OF ARGUMENT .......................................... 7

ARGUMENT ..................................................... 8

    I.    The District Judge did not abuse his discretion
            in declaring a mistrial during the first trial
            of this action. .................................... 8

    II.   The plaintiff cannot complain because he
            implicitly consented to the mistrial. .............. 13

    III.  To the extent plaintiff seeks a retrial,
            this appeal is moot because he has already
            received a retrial. ............................... 15

CONCLUSION ................................................... 17

## STATEMENT OF THE ISSUES

Did the district court abuse its discretion in declaring a mistrial during the first trial of this action?

## TABLE OF AUTHORITIES

**Cases**                                                            **Page**

Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824,
    54 L.Ed.2d 717 (1978) ................................... 13

Brasfield v. United States, 272 U.S. 448,
    47 S.Ct. 135, 71 L.Ed.2d 345 (1926) ..................... 12

Brenner v. World Boxing Council, 675 F.2d 445
    (2nd Cir. 1982) cert. denied 459 U.S. 835 (1982) ........ 14

Brock v. North Carolina, 344 U.S. 424,
    73 S.Ct. 349, 97 L.Ed. 456 (1953) ....................... 8

Browder v. Director, Dept. of Corrections, 434 U.S. 257,
    98 S.Ct. 556, 54 L.Ed.2d 521 (1978) ..................... 1

Burke v. Barnes, 479 U.S. 361, 107 S.Ct. 734,
    93 L.Ed.2d 732 (1987) .................................. 15

Colgrove v. Battin, 413 U.S. 149, 93 S.Ct. 2448,
    37 L.Ed.2d 522 (1973) .................................. 11

Finn v. Wood, 178 F.2d 583 (2nd Cir. 1950) .................. 15

Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561,
    104 S.Ct. 2576, 81 L.Ed.2d 483 (1984) .................. 15

Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077,
    87 L.Ed.2d 1458 (1943) ................................. 11

Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523,
    6 L.Ed.2d 901 (1961) .................................. 8, 9

Greate Bay Hotel & Casino v. Tose, 34 F.3d 1227
    (3d Cir. 1994) ......................................... 16

Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066,
    35 L.Ed.2d 425 (1973) ................................... 7

Karcher v. May, 484 U.S. 72, 108 S.Ct. 388,
    98 L.Ed.2d 327 (1987) .................................. 15

Manufacturers Hanover Trust Co. v. Yanakas, 11 F.3d 381
    (2nd Cir. 1993) ........................................ 15

**Page**

O'Connell v. Naess, 176 F.2d 138 (2nd Cir. 1949) ............. 15

Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083,
     72 L.Ed.2d 416 (1982) .................................. 10

Paul v. Henderson, 698 F.2d 589 (2nd Cir. 1982) .............. 10

Richmond v. J.A. Croson Co., 488 U.S. 469,
     109 S.Ct. 706, 102 L.Ed.2d 854 (1989) ................... 15

Royal American Managers, Inc. v. IRC Holding Corp.,
     885 F.2d 1011 (2nd Cir. 1989) ........................... 14

Tull v. United States, 481 U.S. 412,
     107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) ................... 11

United States v. Anzalone, 626 F.2d 239 (2nd Cir. 1980) ........ 7

United States v. Beckerman, 516 F.2d 905 (2nd Cir. 1975) ...... 13

United States v. Carson, 52 F.3d 1173 (2nd Cir. 1995) ...... 7, 14

United States v. Castellanos, 478 F.2d 749
     (2nd Cir. 1973) ......................................... 10

United States v. Dunkel & Co., 173 F.2d 506
     (2nd Cir. 1949) ......................................... 12

United States v. Goldman, 439 F.Supp. 358 (S.D.N.Y. 1977);
     aff'd without opinion 573 F.2d 1297 (2nd Cir. 1977) ...... 14

United States v. Goldstein, 479 F.2d 1061 (2nd Cir. 1973) ..... 14

United States v. Grasso, 600 F.2d 342 (2nd Cir. 1979) ...... 7, 13

United States v. Huang, 960 F.2d 1128 (2nd Cir. 1992) ......... 10

United States v. Klein, 582 F.2d 186 (2nd Cir. 1978) ...... 10, 13

United States v. Perez, 9 Wheat (22 U.S.) 579,
     6 L.Ed. 165 (1824) ....................................... 9

United States v. Ustica, 847 F.2d 42 (2nd Cir. 1988) .......... 10

United States v. Webb, 816 F.2d 1263 (8th Cir. 1987) .......... 12

**Page**

<u>Wade v. Hunter</u>, 336 U.S. 684, 69 S.Ct. 834,
      93 L.Ed. 974 (1949) .................................. 8, 12

<u>Weiser v. Chrysler Motors Corp.</u>, 69 F.R.D. 97
      (E.D.N.Y. 1975) ......................................... 12

<u>White v. Keane</u>, 969 F.2d 1381 (2nd Cir. 1992) ................. 10


**Constitutional Provisions**

U.S. Const. amend. V ........................................ 12

U.S. Const. amend. VII ...................................... 11

U.S. Const. art. III ........................................ 15


**Statutes**

28 U.S.C. § 1870 ............................................ 11


**Other Authorities**

75B Am.Jur.2d <u>Trial</u> § 1743 (1992) ............................ 10

Electrician Tied to Judge Family Killings (March 11, 2005),
      http://abcnews.go.com/US/wireStory?id=572101&CMP=
      OTCRSSFeeds0312 ......................................... 5

Rule 47, F.R.Civ.P. ......................................... 11

Rule 51, F.R.Civ.P. ......................................... 15

Shooting Suspect Faces 4 Murder Charges (March 15, 2005)
      http://abcnews.go.com/US/wireStory?id=583699 ............. 5

W. R. Habeeb, Annotation, <u>Former Jeopardy - Mistrial -
      Consent</u>, 63 A.L.R. 2d 782 (1959) ........................ 14

v

## COUNTER-STATEMENT OF THE FACTS

This case is a civil rights action by Joseph Gibson, III, an inmate of the Connecticut Department of Correction, alleging that the defendants[1] Warden Leslie Brooks and Correctional Treatment Officer Glenn Diefenderfer failed to protect him from assault while he was working as a confidential informant for Osborn Correctional Institution officials in 1999.  Complaint, para. 3; J.A. Vol. II at p. 19.  He alleged that another inmate succeeded in slashing his throat with a homemade knife, even though plaintiff had forewarned officials of the impending attack.  Complaint at para. 8.

Trial commenced on March 21, 2005.  See Tr. of March 21, 2005; J.A. Vol. I.  The testimony graphically chronicled the most dangerous and violent and frightening potentials of prison life.  Plaintiff boasted of his infiltration of the Latin Kings gang in prison, his agreement to inform on the secrets of the gang for the benefit of prison officials, and his ability to find and turn over caches of homemade weapons.  Tr. at pp. 27-31.  Weapons were made from lawn mower blades sharpened into

---

[1]  Summary Judgment was granted in favor of the defendant Lt. William King for lack of personal participation.  See Ruling, J.A. Vol. II at p. 113.  That ruling has not been appealed, rendering that resolution final.  See Browder v. Director, Dept. of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978).

1

sharp daggers, ice picks, and welding rods sharpened to weapon grade. Tr. at p. 34.

Plaintiff testified that his success turned sour after his friend ran up a drug bill in jail with the Terminators, a faction of the Latin Kings that carry out hits. Tr. at p. 38. In the twisted logic of prison life, plaintiff was asked to pay the debt, he refused, and so he was targeted for attack. He also testified that he believed he was suspected of being a "snitch." Tr. at p. 40. Plaintiff testified that he told the defendant Diefenderfer the names of four Terminators whom he heard were out to get him because of this; and that to help plaintiff, officials transferred three of the Terminators out of the prison, but were slow in removing the fourth. The fourth, Raymond Figueroa, attacked plaintiff. Tr. at pp. 41-48. At trial, plaintiff walked up to the jury box and displayed his scar where, he said, his neck "opened up." Tr. at pp. 58-59. On cross-exam plaintiff admitted to a long line of burglary convictions and an assault conviction where he stabbed another inmate in prison. Tr. at pp. 67-67, 75. He admitted being affiliated with the Latin Kings and of having been identified as an enforcer for the gang, i.e., a gang leader who punishes other gang members. Tr. at pp. 68-70. He admitted having a large tattoo on his back with a crown and the letters "ALKN," which stand for the "Almighty Latin King Nation." Tr. at pp. 71-72.

2

He admitted telling an officer, after he was attacked, that he had cut himself shaving. Tr. at p. 124; Record; Exhibit 501.

The defendant Diefenderfer testified that he was working in prison intelligence gathering at Osborn in 1999, and that plaintiff was interviewed because prison sources identified him to be a high ranking member of the Latin Kings who was being recruited to become active. Tr. pp. 83-91. Diefenderfer denied plaintiff's allegations about being told about an impending attack on plaintiff. To the contrary, he testified that plaintiff told him two other inmates were going to be attacked by gang members, and those two were immediately removed to safety. Tr. pp. 100-101; Defendants' Exhibits 503-504; Record. Diefenderfer testified that if plaintiff had ever said he was going to be attacked, he, too, would be moved immediately just like the others. Tr. pp. 103-104.

Plaintiff never told Diefenderfer he was suspected of being a snitch, according to Diefenderfer. To the contrary, plaintiff requested to return to the facility after the assault to avoid any such suspicion. Tr. at pp. 107-108, 120. A subsequent investigation by the Department of Correction and State Police showed that the reason plaintiff was assaulted was because his friend owed a drug debt to the Terminators; that plaintiff was required to pay, and he refused. Tr. at pp. 119-121, Exhibits

3

501, 502. Defendants learned of this problem, for the first time, after the assault. Tr. at p. 119.

Warden Brooks also testified that officers reported security threats to him, via chain of command, and that he wanted to be informed immediately of anything that would impact the safety and security of the facility.   Tr. at pp. 151-161. No one ever reported that Mr. Gibson had become the target of an attack.  Tr. at pp. 161, 176.

Captain Timothy Burke also testified about how plaintiff came to be an informant.  Plaintiff agreed to find weapons and identify gang members to prove he was not conspiring with the Latin Kings anymore.  Tr. at p. 203.  He was one of eight to ten confidential informants working with prison officials at the time.  Tr. at p. 205.  Plaintiff never told Captain Burke that he felt he was in danger.  Tr. at p. 204

At the time of this testimony, plaintiff was not in prison. He was living with his father in Meriden.  Tr. at p. 22.

The next morning, before the start of trial, Judge Eginton called counsel into his chambers to relay a message from the jury.  Although the conference was not recorded, and the message from the jury was not written, the judge related that the entire jury reported being too frightened for their safety to be willing to render a verdict.  It was reported that the jury was afraid because they all had disclosed much personal information

4

during the jury selection process, including their names, towns
of residence, business information, and family member
information.  It was also reported that the jury apparently felt
that they were now drawn into dealing with the same violent
world as was depicted in the testimony without protection, and
that they could be targeted for violent reprisal because of
their participation in any verdict that might be rendered in the
dispute involving those actors, regardless of the outcome, as
had some court personnel, or their families, in other states
been attacked recently merely because of their participation in
judicial proceedings[2].   It was true that much personal
information about the jurors had been disclosed in this case
during jury selection on March 3, 2005, as is usual.  See Juror
Biographical Report of March 3, 2005 provided to counsel for
jury selection, Redacted Copy attached in App. A.   Confronted
with this problem, the judge and both counsel seemed to
simultaneously conclude that the best resolution would be to

---

[2]  Shortly before the March 21, 2005 jury trial, the news was
filled with stories about a Chicago federal judge's family
killed by a disappointed litigant.  See Electrician Tied to
Judge Family Killings (March 11, 2005), http://abcnews.go.com/
US/wireStory?id=572101&CMP=OTCRSSFeeds0312. Also, the news was
filled with stories of a criminal defendant who stole a gun
from a court guard and then killed the judge in his rape
trial, two other persons in the courthouse, and a federal
agent chasing him.   See Shooting Suspect Faces 4 Murder
Charges (March 15, 2005) http://abcnews.go.com/US/wireStory?id
=583699.

dismiss the unwilling jury and to start afresh with a new jury selected and serving with some measure of anonymity so as to not repeat the problem.    The judge then went on the record to dismiss the jury, reciting the report of the jury's security concerns in reaction to the evidence and their personal disclosures, the recent news of attacks on court personnel and their families, and the court's intent to proceed differently with some protection for the next jury.  Tr. of March 22, 2005 at p. 2-3; J.A. Vol. I; copy attached in App. B.    The jury responded in silent affirmation.    Id.    The jury was then dismissed, and the judge expressed his preference to eschew publicity so as not to scare future juries, hoping for a quite resumption of court business.    Tr. at p.  4-5.    No party objected.  Id.

What happened next was anything but quiet.    The news soon spread, from coast to coast, that a judge had dismissed a jury after it expressed fear for its own safety.    The media reported that the violent facts in the case, and recently, highly publicized murderous attacks on court personnel and their families by deranged litigants, spooked the jury.    See News Clippings, Proposed Exhibit 509 discussed in Defendants' Motion in Limine; J.A. Vol. II at pp.182-188; Copies attached in App. C.

A second jury was selected on May 3, 2005 without disclosing the home towns or employers of the persons in the jury panel this time. See Juror Biographical Report of May 2, 2005 provided to counsel for jury selection, Redacted copy attached in App. D. During the re-trial, the selected jurors were referred to by their first names only. See Tr. of May 25, 2005, at pp. 6-8; J.A. Vol. I.  The verdict was unanimous for the defendants. Id.  This appeal followed.

## STANDARD ON REVIEW

Trial court decisions on mistrials are reviewed under the abuse of discretion standard.  Illinois v. Somerville, 410 U.S. 458, 464, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); United States v. Carson, 52 F.3d 1173, 1188 (2nd Cir. 1995); United States v. Anzalone, 626 F.2d 239, 246 (2nd Cir. 1980).  A decision to declare a mistrial sua sponte must be upheld if the trial court exercised "sound discretion."  United States v. Grasso, 600 F.2d 342, 344 (2nd Cir. 1979).  A trial court's evaluation as to events occurring before the jury is to be accorded the highest deference.  Id. at 343 n. 5.

## SUMMARY OF ARGUMENT

Contrary to plaintiff's argument, the district court judge in this case did not abuse his discretion in declaring a mistrial in the first trial in this case.  The jury would not be rendering a verdict, so a mistrial was the only recourse.

7

Plaintiff did not object, and he participated in the retrial without complaint, until he lost. He must be deemed to have consented and, therefore, no grounds for appeal exist. Finally, since he already received the remedy he seeks - a retrial - this appeal is moot.

## ARGUMENT

I.  **The District Judge did not abuse his discretion in declaring a mistrial during the first trial of this action.**

The rule on mistrials, expressed in varying language in judicial decisions, vests the trial court with authority to discharge a jury in the exercise of sound discretion, and not arbitrary, but only where there is urgent necessity or a compelling reason, or where failure to do so would defeat the ends of justice. See Gori v. United States, 367 U.S. 364, 369, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); Brock v. North Carolina, 344 U.S. 424, 427, 73 S.Ct. 349, 97 L.Ed. 456 (1953); Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Decisions on point often harken to the wisdom of Chief Justice Story, writing for a unanimous court, who gave the following guide:

> ...We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the

8

circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office....

United States v. Perez, 9 Wheat (22 U.S.) 579, 580, 6 L.Ed. 165 (1824). In applying this standard, the United States Supreme Court has consistently declined to scrutinize, with sharp surveillance, the exercise of that discretion. Gori v. United States, supra at 368.

The instant case presented the district court with an entirely appropriate and necessary occasion for declaring a mistrial. The jury clearly informed the court that they were unanimously unable to render a verdict due to concerns for their safety. The grisly facts, vividly brought to life during the trial, demonstrated the truth that violent street gangs extract revenge against those who cross them, and the recent events in the news about court personnel and their families being murdered by deranged litigants apparently paralyzed this panel. Having disclosed their towns of residence and much personal information about themselves and their families, as is routine in the jury selection process, this panel, charged with resolving the issues

9

involving those people, felt unprotected from that danger and, therefore, unwilling to proceed further.

Although not for the usual reasons, this jury was, for all practical purposes, a hung jury. It already informed the court that it was not going to give a verdict, even before evidence closed, due to concerns for their personal safety. A hung jury is the most common example of circumstances in which the need for a mistrial is manifest. United States v. Huang, 960 F.2d 1128, 1135 (2nd Cir. 1992) citing Oregon v. Kennedy, 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); White v. Keane, 969 F.2d 1381, 1383 (2nd Cir. 1992); United States v. Ustica, 847 F.2d 42 (2nd Cir. 1988); Paul v. Henderson, 698 F.2d 589, 592 n. 6 (2nd Cir. 1982); United States v. Klein, 582 F.2d 186, 194 (2nd Cir. 1978); United States v. Castellanos, 478 F.2d 749, 751 (2nd Cir. 1973); 75B Am.Jur.2d Trial § 1743 (1992). The need could not have been clearer than as was evident in this case.

Plaintiff argues that the jury should not have been discharged because any new jury would be exposed to the same problems, and because the court gave no consideration to the necessity or desirability of increased security. Plaintiff's Brief, p. 10. This is not correct. The court did reflect on the need for new measures to protect a new jury. See Tr. of March 22, 2005 at pp. 3-4; J.A. Vol. I, App. B. Consequently,

the new jury was selected without reference to their residences or employers. See Redacted Juror Biography Report, App. D. Also, in the second trial, they were referred to by their first names only. See Tr. of May 25, 2005 at pp. 6-8; J.A. Vol. I.

Invoking the Seventh Amendment to the United States Constitution, plaintiff also contends that he was deprived of his right to be tried by the particular jury he has selected. Plaintiff's Brief, p. 11. The argument is not factually correct. Plaintiff did not pick the jury. The defendants were equally involved in that process. See 28 U.S.C. § 1870 (peremptory challenges); Rule 47, F.R.Civ.P. (selection of jurors). Nor is it legally correct. The Seventh Amendment provides no such guarantee. The Amendment provides, in pertinent part, as follows:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...

U.S. Const. amend. VII

This constitutional provision admits of no such right on its face, and the case law finds that, in this provision, the framers were concerned only with preserving the right of trial by jury in civil cases, not any particular incidents of practice. Colgrove v. Battin, 413 U.S. 149, 155-56, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973); accord, Tull v. United States, 481 U.S. 412, 426, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987); Galloway

11

v. United States, 319 U.S. 372, 392, 63 S.Ct. 1077, 87 L.Ed.2d
1458 (1943); Weiser v. Chrysler Motors Corp., 69 F.R.D. 97, 99
(E.D.N.Y. 1975).

Those cases that have discussed "a defendants valued right
to have his trial completed by a particular panel" invoke the
double jeopardy clause of the Fifth Amendment, U.S. Const.
amend. V, a measure not applicable in this case, and that right
"must in some instances be subordinated to the public's interest
in fair trials designed to end in just judgments" such as in the
case of a hung jury. Wade v. Hunter, 336 U.S. 684, 689, 69
S.Ct. 834, 93 L.Ed.2d 974 (1949). Forcing a jury to continue to
deliberate when it has declared that it cannot do so due to
security concerns does not serve the public interest. To the
contrary, a coerced verdict must be set aside. Brasfield v.
United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed.2d 345
(1926); United States v. Webb, 816 F.2d 1263, 1267 (8th Cir.
1987); United States v. Dunkel & Co., 173 F.2d 506, 509 (2nd
Cir. 1949).

Finally, plaintiff argues that there was simply nothing in
the record to suggest that the unhappiness or concerns of the
jurors would prevent them from performing their duties as
instructed by the court. Plaintiff's Brief, p. 12. This is
also incorrect. This jury was frozen, and the court recognized
that a mistrial was the only recourse. The court summarized the

12

circumstances that the jury had reported that had prevented them from functioning, and the jury assented by its silence to his recap.   Tr. of March 22, 2005 at pp. 3; App. B.   The court was not required to make special findings or explanations before declaring a mistrial, and this court accords the "highest deference" to the trial judge's evaluation.   United States v. Grasso, supra at 343; citing Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); United States v. Klein, supra at 194.

## II.  The plaintiff cannot complain because he implicitly consented to the mistrial.

The record reflects that following the court's discussion of the jury's message that it could not deliver a verdict in this case, and after it discharged the jury due to the mistrial, there was no objection from the plaintiff. See Tr. of March 22, 2005; J.A. Vol. I; App. B.   No objection was made during or after the second trial.   See Trs. of May 23, 24 and 25; J.A. Vol. I.   The first time this issue was raised was on appeal. The issue cannot be raised now.

Where the party had opportunity to object to the trial court's declaration of a mistrial, yet did not object, and the totality of circumstances reflect consent, that party is deemed to have implicitly consented to a mistrial, and there is no ground for reversal on appeal. United States v. Beckerman, 516

13

F.2d 905, 909 (2nd Cir. 1975); United States v. Goldstein, 479
F.2d 1061, 1067 (2nd Cir. 1973); United States v. Goldman, 439
F.Supp. 358, 362 (S.D.N.Y. 1977); aff'd without opinion 573 F.2d
1297 (2nd Cir. 1977); see, generally, W. R. Habeeb, Annotation,
Former Jeopardy – Mistrial – Consent, 63 A.L.R. 2d 782 (1959).
Those circumstances are certainly present here.   Plaintiff and
his counsel in this case gave no hint of opposition, and they
appeared to accept a new trial as the agreed, proper recourse,
and they joined in the picking of a new jury without complaint
and went through the entire retrial without opposition.    It
would be patently unfair, and, in effect, an "ambush" of the
trial judge, if appellant were permitted to make no objection to
a  ruling  of  mistrial,  participate  in  a  retrial  without
objection, and then assign as error the court's ruling after
waiting to see if he won or lost.  See Royal American Managers,
Inc. v. IRC Holding Corp., 885 F.2d 1011, 1018 (2nd Cir. 1989)
(jury demand waived).

Accordingly, it has been held that without objection, there
is nothing preserved for review in the absence of plain error[3],

---

[3]  Plain error is only appropriate in the civil context where the
"error [is] so serious and flagrant that it goes to the very
integrity of the trial." United States v. Carson, 52 F.3d
1173, 1188 (2nd Cir. 1995) citing Brenner v. World Boxing
Council, 675 F.2d 445, 456 (2nd Cir. 1982) cert. denied 459
U.S. 835 (1982) (citations and internal quotations omitted).
Plaintiff does not appear to expressly seek plain error review
in this case.  No such review is merited, either.

which does not appear here. Finn v. Wood, 178 F.2d 583, 584
(2nd Cir. 1950) citing Rule 51, F.R.Civ.P., and O'Connell v.
Naess, 176 F.2d 138, 140 (2nd Cir. 1949).

**III. To the extent plaintiff seeks a retrial, this appeal is moot because he has already received a retrial.**

Plaintiff's failure to object to the dismissal of the jury
in the first trial, and his being accorded a second trial, gives
grounds for another reason to dismiss this appeal:  mootness.

The Court of Appeals cannot hear an appeal in the absence
of a live case or controversy. See U.S. Const. art. III; Burke
v. Barnes, 479 U.S. 361, 363, 107 S.Ct. 734, 93 L.Ed.2d 732
(1987) ("Article III of the Constitution requires that there be
a live case or controversy at the time that a federal court
decides the case."). If the appellant, through his own
voluntary action, renders its appeal moot, the Court of Appeals
must dismiss the appeal and leave the decision below intact.
See Karcher v. May, 484 U.S. 72, 83, 108 S.Ct. 388, 98 L.Ed.2d
327 (1987); Manufacturers Hanover Trust Co. v. Yanakas, 11 F.3d
381, 383 (2nd Cir. 1993). That said, so long as the appellant
retains some interest in the case, so that a decision in his
favor will inure to his benefit, his appeal is not moot. See
Richmond v. J.A. Croson Co., 488 U.S. 469, 478 n. 1, 109 S.Ct.
706, 102 L.Ed.2d 854 (1989); Firefighters Local Union No. 1784

v. Stotts, 467 U.S. 561, 568-72, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984).

In the instant case, the only relief this court can give plaintiff, and the only relief he seeks, is a remand for a new trial. Plaintiff's Brief, p. 14. However, by his conduct in failing to object to a mistrial and participating without complaint in the second trial, he already received the benefit of a second trial, hence, there is nothing further to be given to the plaintiff. Greate Bay Hotel & Casino v. Tose, 34 F.3d 1227, 1235 n. 14 (3d Cir. 1994). Plaintiff's argument, that "he can be given ... another attempt at trying his case before a favorably-disposed jury", Plaintiff's Brief, p. 14, is, at best, presumptuous. Defendants can equally hope that any fairly chosen jury, hearing the same facts and law, would render its verdict for the defendants again. The fact remains that plaintiff seeks a retrial. He already received a retrial. The matter, therefore, is moot.

16

## CONCLUSION

For all of the foregoing reasons, we urge the court to affirm the judgment of the district court.

> Respectfully submitted,
>
> Defendants-Appellees
> Warden Brooks, et al.
>
> RICHARD BLUMENTHAL
> ATTORNEY GENERAL
>
> By: _____
> Robert F. Vacchelli
> Assistant Attorney General
> 110 Sherman Street
> Hartford, CT 06105

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

The undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief uses a monospaced typeface and contains 538 lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


                                    _____
                                    Robert F. Vacchelli
                                    Assistant Attorney General


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the Defendants' Brief and Appendix were mailed to the following by first class mail, postage prepaid, on the 21st day of November, 2005:

    John R. Williams, Esq.
    John R. Williams & Associates, LLC
    51 Elm Street, Suite 409
    New Haven, CT   06510


                                    _____
                                    Robert F. Vacchelli
                                    Assistant Attorney General